**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

RECEIVED & FILED
'00 DEC -4 PM 2: 11
CLERK'S OFFICE
US. DISTRICT COURT
SAN JUAN P.R.

MEADOWLAND PORTFOLIO, LLC,

v.

ALFREDO N. AYALA COLON                        CIVIL NO. 96-1955 (DRD)

---

## ORDER

Pending before the Court are Docket Nos. 17, 20 and 23. The Court rules as follows.

**Docket No. 17:**

On July 31, 2000, defendant Alfredo N. Ayala Colón ("Ayala Colón"), filed a Motion for Consignment of Monies and Request for Order. (Docket No. 17). Plaintiff opposed said motion on August 25, 2000. (Docket No. 21). For the following reasons, defendant's motion is **GRANTED**.

On March 17, 1997, judgment was entered by the Court against defendant in the above captioned case. (Docket No. 17). The parties, then, on April 2, 1998, executed a settlement contract for payment by defendant of judgment against him in favor of plaintiff. (Docket No. 17). Defendant alleges that

> "[Ayala Colón] did comply with the payment of the installments, on or around the stipulated due date. The last installment of $3,000 was due on May 6, 2000. When arrangements for said payment and the release of a lien upon the property securing the debt, were being made, as may be seen in the letter dated April 27, 2000, from Carlos M. Perdomo-Ferrer, plaintiff refused accepting the last installment and demanded more than $13,000 for full satisfaction of the judgment."

(Docket No. 17). In addition, defendant admits that "some of the checks were received one or two days after its due date." (Docket No. 17). In the opposition, plaintiff requests the Court to deny defendant's motion for consignment of monies because "[d]efendant did not comply with any of the seven conditions" contained the Agreement. (Docket No. 21).

Jurisdiction over this case is predicated on diversity jurisdiction, 28 U.S.C. § 1332. Therefore, the Court applies state substantive law in this diversity jurisdiction claim. See Erie v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 118 (1938); Merchants Ins. Co. of New Hampshire v. United States Fid. & Guar. Co., 143 F.3d 5 (1st Cir. 1998); Cortés-Irrizarry v. Corporación Insular, 111 F.3d 184, 189 (1st Cir. 1997).

Paragraph 3 of the agreement, in pertinent part states

> "The Judgment shall be deemed fully satisfied upon payment to and receipt by Meadowlands from Ayala of the aggregate amount of NINETY THOUSAND DOLLARS ($90,000) (the "Settlement Amount") in *strict* compliance with the following payment schedule:
> 1. An initial payment of *an amount not less than* FIFTEEN THOUSAND DOLLARS ($15,000.00) . . .
> 2. The balance of the Settlement Account in twenty-five (25) monthly installments,



of THREE THOUSAND DOLLARS ($3,000.00) each, *commencing on May 6, 1998*. Payment of these monthly installments must be **received** by Meadowlands, **no later than the sixth (6th) day of each month**, at the following address . . .

3. All payments to Meadowlands must be *via* cashier's or bank manager's check payable to the order of "Meadowlands Portfolio, LLC". Ayala may choose to make payments *via* personal company check; however, any check returned to Meadowland for insufficient finds or for any other reason shall be deemed as default by Ayala under this Agreement.

4. Time is of the essence with respect to all payments. There is no grace period. There is no penalty for early repayment.

5. Ayala acknowledges that payment of the Settlement Amount and strict compliance with the payment schedule set forth above are neither subject to nor contingent upon any event or the obtention of any loan or credit facility.

6. **In the event that settlement payments referred to in paragraphs 1 and 2 above are not received by Meadowlands *on a timely basis*, Ayala defaults and/or is late on any of the payments at any time, Meadowlands shall have the right to immediate execution of, and to recover the full amount in Judgment, including post-judgment interest and additional costs and legal fees, and a writ of execution shall be issued forthwith for the amount of the Judgment remaining unpaid. Meadowlands may continue to accept payments without waiving said default of such payments and such payments will be applied against the Judgment and post Judgment interest."**

(Docket No. 17; Exh. A).

"The purpose of a [penalty] clause is to have, at the time at which the parties execute the contract, an agreement as to the value of damages in the case of breach, instead of going through the process of having a court determine them after the breach." Tardanico v. M. Murphy, 983 F.Supp. 303, 309 (D.P.R. 1997). See Jack's Beach Resort v. Tourist Company, 112 D.P.R. 344 (1982), 12 Official Translations 433. Pursuant to 31 P.R. LAWS ANN. § 1331, "[i]n obligations with a penal clause the penalty shall substitute indemnity for damages and payment of interest in case of nonfulfilments, should there be no agreement to the contrary. This penalty can only be enforced when it is demandable in accordance with the provisions of [Title 1106]." However,

"[I]ts aim is not always the advance of liquidation of damages. It has a punitive function of violation of the juridical duty that gives the clause it other name, 'conventional penalty,' and which, going beyond the motive of profit in the ordinary obligation, introduces an element of restriction and threat that compels the debtor to perform."

Jack's Beach Resort, 112 D.P.R. 344, 12 Official Translations at 434. In addition, the Puerto Rico Civil Code also states that "[t]he court or judge shall equitably modify the penalty if the principal obligation should have been partly or irregularly fulfilled by the debtor." 31 P.R. LAWS ANN. § 3133. See WRC Props. Inc. v. Santana, 116 D.P.R. 127 (1985); Jack's Beach Resort, 112 D.P.R. at 344, 12 Official Translations 433.

Meadowlands argues that "the provision setting forth that any failure of the defendant to comply with the Agreement would give Meadowlands the right to collect the full Judgment debt

**is not** a penal clause," and that "as the Agreement itself established, on the **strict** compliance with it would grant Ayala the right to pay only $90,000 of the Judgment debt and thus settle the debt." (Docket No. 21). However, "[t]he final effect of the penal clause is what regulates its existence, and not the use of a specific language in the contract." Jack's Beach Resort, 112 D.P.R. 344, 12 Official Translations at 434.

> "'Though an expression of the will is necessary when a penal clause is agreed to, there is no need for it to be express; it may be implied and even tacit if, as a result of the function of what was agreed, a truly penal purpose is discovered. It follows from this that the existence of a penal clause will not depend on the terms used by the contracting parties, but on the genuine function of the agreement. Thus, an agreement not designated as such may constitute a penal function even though it is thus called by the contracting parties.'"

Jack's Beach Resort, 112 D.P.R. 344, 12 Official Translations at 434. (citing J.M. Lobato, La Cláusula Penal en el Derecho Español 140 (Pamplona 1974). Thus, even if the Agreement does not contain a specifically designated penalty clause, the language used in the agreement, specifically paragraph 6 can be implied to be a penalty clause. See Docket No. 17; Exh. C.

As previously mentioned, "in order to mitigate the punitive character of the penal clause when the agreement transcends the damages arising from nonfulfilment, the Civil Code authorizes the judge to equitably modify the penalty if the principal obligation has been partly or irregularly fulfilled by the debtor." Levitt and Sons of Puerto Rico, Inc. v. Federico Hernández Denton, 105 D.P.R. 184 (1976), 5 Official Translations 229, at 261. The mitigation judicial function comes into play in the instant case, since the penalty does not keep just proportion with the foreseeable damages caused by the nonfulfilment, without imposing a punitive onerous burden. See id.

Although as defendant admits "approximately 50% of the payments were received on time, the others were received a couple of days after the due date," and that "there was a check that was mistakenly refused by the bank" (the check later cleared 18 days later), plaintiff never refused any payment from defendant or informed defendant that he was in noncompliance with his obligations. (Docket No. 17). Further, as defendant points out "[i]t was not until the last payment, after having received all the other 24 payments without complaint, that [Meadowlands] refused the last one, still holding the lien, that it demanded the more than $10,000 penalty." (Docket No. 17) (emphasis added). The Court finds that the penalty claimed by defendant is significantly disproportionate considering that plaintiff remained cashing all payments made by defendant; that it was not until the last payment that plaintiff informed defendant he was in breach; and plaintiff refused to tender the lien in bad faith. Therefore, Court **GRANTS** defendant's Motion For Consignment of Monies. Consequently, 1) the $3,000 deposited by defendant with the Clerk of this Court is to be accepted by plaintiff as the last payment to be made under the Agreement; 2) the settlement agreement is to be deemed complied with upon receipt of the $3,000 payment; and 3) the lien over defendant's property is ordered removed in view of the satisfaction of the obligation that caused it.

## Docket Nos. 20 and 23

Plaintiff's Request for Brief Additional Enlargement of Time (Docket No. 20) and Motion

Requesting Disposition of Matter (Docket No. 23) are hereby **GRANTED/MOOT**.
**IT IS SO ORDERED**.

**Date: November _30_ , 2000**

P \PEACHORD ERS\96-1955 ord

**DANIEL R. DOMINGUEZ**
**U.S. District Judge**